```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

BARBARA HULL                                              PLAINTIFF

VS.                                CIVIL ACTION NO. 3:05CV177TSL-MTP

WYETH; WYETH PHARMACEUTICALS INC.;
PFIZER, INC.; PFIZER, INC.;
PHARMACIA & UPJOHN COMPANY;
PHARMACIA CORPORATION AND
GREENSTONE LTD.                                          DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Defendants Wyeth, Wyeth Pharmaceuticals Inc. (collectively Wyeth), Pharmacia & Upjohn Company (a/k/a Pharmacia & Upjohn, Inc.) and Pfizer, Inc. (collectively Upjohn), and Greenstone Ltd. have moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment on the basis of the statute of limitations. Plaintiff Barbara Hull has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted as to Upjohn and Greenstone, but denied as to Wyeth.

Plaintiff Barbara Hull alleges she took Premarin, Provera and Prempro, hormone replacement therapy (HRT) medications, to relieve menopausal symptoms from 1993 until her diagnosis with breast cancer in August 2000.[1] On March 17, 2005, more than four years

---

[1] Ms. Hull had a successful surgery for the cancer, followed by radiation treatments and chemotherapy, and has remained free of breast cancer since her treatment.

after her breast cancer diagnosis, Ms. Hull filed the present lawsuit alleging her breast cancer was caused by the HRT drugs manufactured by defendants.[2]  Ms. Hull has asserted products

---

[2]     In 1942, Wyeth introduced Premarin, a prescription product containing conjugated equine estrogen intended to replace the estrogen naturally decreasing in women during menopause and reduce the associated symptoms.  In re Prempro Products Liability Litigation, 586 F.3d 547, 554 (8th Cir. 2009).  In 1959, defendant Upjohn Company launched Provera, a progestin product approved for treatment of abnormal uterine bleeding.  Id.
> By the 1970s, studies showed a link between estrogen replacement drugs such as Premarin and endometrial cancer.  It was later determined that prescribing progestin along with estrogen reduced this risk. Although the Food and Drug Administration (FDA) had not approved the combination of estrogen and progestin for treating menopausal symptoms, such combination hormone therapy became the standard of care.  Provera was often lawfully prescribed for this off-label use in conjunction with Premarin.  In 1994, Wyeth became the first pharmaceutical company to combine estrogen and progestin into one package with the launch of Prempro. In 1995, Prempro became the first pharmaceutical that combined the two hormones into a single tablet. As of 2008, Premarin and Provera were the most common forms of estrogen and progestin replacement drugs.

Id.
      Pfizer has been named as a defendant based on plaintiff's allegation, upon information and belief, that Pfizer is liable as a successor-in-interest to Pharmacia & Upjohn (Upjohn). Defendants assert in their motion that Pfizer did not manufacture or distribute Premarin or Provera during the time plaintiff took those medications, is not a successor-in-interest to any other defendant and is not independently liable for the past acts of any other defendant.  However, while Pfizer has reserved the right to seek dismissal on these bases, the present motion seeks dismissal solely on the basis of the statute of limitations.
      While defendant Greenstone manufactures a generic medroxyprogesterone acetate (MPA) (the base ingredient in Provera), plaintiff does not appear to contend she took a generic MPA.

liability claims (including negligence and strict liability), and claims for breach of express and implied warranties and negligent and fraudulent misrepresentations, all based, in general, on allegations that defendants knew or should/could have known that their HRT medications caused breast cancer and yet failed to adequately warn about, and/or misrepresented and/or concealed the known or knowable risk of breast cancer from ingestion of their HRT medications, which proximately caused plaintiff's breast cancer. Defendants have moved for summary judgment, contending plaintiff's claims are barred by the three-year statute of limitations in Mississippi Code Annotated § 15-1-49.[3]

The parties agree that the applicable statute of limitations for all of the claims asserted by plaintiff is the general three-year statute of limitations set forth in Mississippi Code Annotated § 15-1-49. See § 15-1-49(1) ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."). Their dispute – or their first dispute – centers on

---

[3] This case was originally filed in state court and was removed by defendants on the basis of diversity jurisdiction. Soon after removal, it was transferred to the Multi-District Litigation (MDL) Docket No. 1507: In re Prempro Products Liability Litigation (In re Prempro) before District Judge William R. Wilson, Jr. of the Eastern District of Arkansas. The case remained pending in the MDL until March 27, 2012, when it was remanded to this court. Defendants filed their motion for summary judgment motion promptly after remand from the MDL court.

*when* the limitations period commenced.  Section 15-1-49(2) establishes a latent injury discovery rule, stating,

> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49(2).  There is no dispute that this rule applies in this case.  However, whereas Wyeth argues that all of plaintiff's claims accrued on the date of diagnosis of her breast cancer since that is the date on which she discovered "the injury," plaintiff insists that she did not discover "the injury" until at the earliest, July 2002, when published reports of the results of a Women's Health Initiative (WHI) study first linked HRT drugs to breast cancer.[4]  Plaintiff submits it was then that she first knew or should (or could) have known that there was a causal link between HRT drugs and breast cancer and thus that this is the first date on which she knew or should have known that she had a "legally recognizable injury."

---

   [4]   In July 2002, the National Institutes of Health published the results of its Women's Health Initiative (WHI) study, linking the use of hormone replacement therapy to breast cancer. In re Prempro Products Liability Litigation, 586 F.3d 547, 554 (8th Cir. 2009).  Plaintiff alleges that defendants knew or should have known of the link between their HRT drugs and breast cancer prior to publication of the WHI study results and yet concealed this information and misrepresented the drugs were safe and effective not only for treatment of menopausal symptoms but for other uses as well.

The argument that a cause of action involving a latent injury does not accrue under § 15-1-49(2) until the would-be plaintiff discovers or reasonably should have discovered both the injury and the cause of her injury has been repeatedly rejected by the Mississippi Supreme Court, and by the Fifth Circuit and this court applying the Mississippi Supreme Court's interpretation of the statute. See Angle v. Koppers, Inc., 42 So. 3d 1, 3 (Miss. 2010) (holding that a cause of action for recovery on account of latent disease or injury "accrues upon discovery of the injury, not discovery of the injury and its cause"); Lincoln Electric Co. v. McLemore, 54 So. 3d 833 (Miss. 2010) (holding that "...Section 15-1-49 does not require a plaintiff to know the cause of the injury before accrual of the cause of action[,]" and thus "...knowledge of the cause of an injury is irrelevant to the analysis [under §15-1-49(2)"); Owens-Illinois, Inc. v. Edwards, 573 So. 2d 704, 709 (Miss. 1990) (stating that "[t]he cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease.... Though the cause of the injury and the causative relationship between the injury and the injurious act or product may also be ascertainable on this date, these facts are not applicable under § 15-1-49(2)..."); Barnes v. Koppers, Inc., 534 F.3d 357 (5th Cir. 2008) (stating that "[u]nder § 15-1-49, a cause of action accrues when the plaintiff has knowledge of the injury, not knowledge of the injury and its cause."); Bryant v. Wyeth, 816 F. Supp. 2d 329, 334 (S.D. Miss. 2011), aff'd, 2012 WL 3854550, 1

5

(5th Cir. Sept. 5, 2012) (holding that under § 15-1-49(2), a cause of action accrues "when the plaintiff has knowledge of the injury, not knowledge of the injury and its cause"); Hewitt v. Wyeth, No. 5:03CV333TSL-MTP (S.D. Miss. July 7, 2011) (same). In fact, just like this case, Bryant and Hewitt involved claims against Wyeth based on allegations that its HRT product(s) caused the plaintiffs' breast cancers. This court concluded that under § 15-1-49(2), the plaintiffs' claims for recovery based on the allegation that their cancers were caused by Wyeth-manufactured HRT medications were time-barred since the plaintiffs filed their lawsuits more than three years after their respective diagnoses with breast cancer, notwithstanding allegations that they neither knew nor (according to their allegations) reasonably should (or could) have known that the Wyeth HRT drugs they had taken had caused their cancers. For the reasons set forth in Bryant and Hewitt, and in all of the cited authorities, the court rejects plaintiff's argument herein that her claims accrued not when she learned that she had breast cancer but rather later, in July 2002, when she claims she first learned, or reasonably could have learned of the causal link between defendants' HRT products and breast cancer.[5]

---

[5] The court acknowledges, but rejects as patently without merit plaintiff's argument that the Mississippi Supreme Court's opinion in Angle v. Koppers, Inc., 42 So. 3d 1 (Miss. 2010), announced a new interpretation of § 15-1-49(2) that should not be given "retroactive" effect. As defendants correctly point out, Angle merely applied the plain language of § 15-1-49 in a way that was consistent with earlier opinions discussed in that opinion. See 42 So. 3d at 5-7.

6

The court thus concludes that all of plaintiff's claims accrued in August 2000, when she was diagnosed with breast cancer.[6] Plaintiff did not bring her claims within three years of the date of her diagnosis. Nevertheless, she submits that her claims are timely because defendants' fraudulent concealment

---

[6] Plaintiff submits that even if her other claims are held to have accrued when she was diagnosed with breast cancer, her "fraud-based claims" did not accrue until, at the earliest, in July 2002, upon publication of the WHI study results, since that is the first time she knew, or could have known, of the link between HRT drugs and breast cancer. However, the court is not persuaded that a different accrual rule applies to her fraud claims.

The Mississippi Supreme Court has consistently held that a cause of action accrues, and the statute of limitations "begins to run when all the elements of a tort, or cause of action, are present." Weathers v. Metro. Life Ins. Co., 14 So. 3d 688, 692 (Miss. 2009) (quoting Caves v. Yarbrough, 991 So. 2d 142, 147 (Miss. 2008)). This is consistent with the Mississippi Supreme Court's more specific holding that a cause of action for fraud accrues "upon the completion of the sale induced by such false representation, or upon the consummation of the fraud." Dunn v. Dent, 169 Miss. 574, 153 So. 798 (1934). The elements of a cause of action for fraud are "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth; (8) his right to rely thereon, and (9) his consequent and proximate injury." Trim v. Trim, 33 So. 3d 471, 478 (Miss. 2010) (citation omitted). Once plaintiff developed breast cancer, all of the elements of her fraud claim were present. However, as hers was a latent injury, her cause of action was subject to the latent injury discovery rule of § 15-1-49(2), pursuant to which her cause of action did not accrue until she discovered the injury, i.e., upon her breast cancer diagnosis. There is no statutory authority for application of a fraud discovery rule or for excepting fraud claims from the latent injury discovery rule of § 15-1-49(2). The single case plaintiff cites for a different fraud accrual rule plainly does not support her suggestion that fraud claims are subject to a discovery rule (other than the latent injury discovery rule when the fraud results in a latent injury).

tolled the running of the limitations period.[7] Mississippi Code Annotated § 15-1-67 provides tolling for fraudulent concealment:

---

[7] Plaintiff also urges, presumably as an alternative to tolling based on fraudulent concealment, that her claim was timely (even without proof of fraudulent concealment) as the statute of limitations was tolled by the filing and during the pendency of two nationwide class actions against Wyeth of which she was a putative member. Specifically, on July 15, 2002, a national class action complaint in Lewers v. Wyeth, No. 02-4970 (N.D. Ill.), was filed in the Northern District of Illinois alleging damages arising from the use of Prempro. The case was transferred to the Multi-District Litigation docket in the Eastern District of Arkansas, along with all other pending HRT cases, and was voluntarily dismissed on May 21, 2003. A second putative nationwide class action, Michael v. Wyeth Pharmaceuticals, Inc., No. 2:04-cv-00435 (S.D. W.Va.), was filed May 6, 2004, for injuries allegedly caused by the defendants' HRT products. That case was also transferred to the Eastern District of Arkansas, where the class allegations of the complaint were dismissed on October 20, 2005.

However, while the filing of a class action suit tolls the statute of limitations for all the members of the class until class certification is denied or the suit is dismissed without prejudice, see American Pipe and Construction Co. v. Utah, 414 U.S. 538, 554, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350, 352-55, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983), such tolling is recognized only for the first class certification petition and not for any subsequent petitions involving the same class. See Lanzas v. American Tobacco Co., Inc., 46 Fed. Appx. 732, 2002 WL 1973817, 3 (5th Cir. 2002); Salazar-Calderon, 765 F.2d 1334, 1351 (5th Cir. 1985) (applying a no-"piggyback" rule that precludes class members from availing themselves of the Crown rule to file successive class actions involving members of the same putative class to "toll the statute of limitations indefinitely" for the purpose of later filing individual claims and indicating that "it has repeatedly been noted that the tolling rule [in the context of class actions] is a generous one, inviting abuse," and that "to construe the rule" to allow for successive class action tolling "presents just such dangers") (internal quotation and citations omitted). Thus, even assuming the statute of limitations on plaintiff's claims was tolled during the pendency of Lewers, it plainly was not tolled during the pendency of the later-filed Michael case, and even excluding the 310 days Lewers was pending from the limitations calculation, plaintiff's claim was still untimely (unless she can establish fraudulent concealment).

8

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67. "To establish fraudulent concealment, plaintiff must demonstrate (1) that defendants acted affirmatively to conceal the fraud; and (2) that plaintiffs could not have discovered the alleged fraud with the exercise of due diligence." Liddell v. First Family Financial Services, Inc., 146 Fed. Appx. 748, 750, 2005 WL 2044555, 1 (5th Cir. 2005) (quoting Stephens v. Equitable Life Assurance Soc'y, 850 So. 2d 78, 82 (Miss. 2003)). Plaintiff submits that fraudulent concealment tolling applies in this case because defendants undertook affirmative acts (both preceding and following her breast cancer diagnosis) to conceal from plaintiff and her physicians that HRT drugs can cause breast cancer, and because she did not and could not have discovered that defendants' HRT drugs caused her breast cancer until the results of the Women's Health Initiative study were published in July 2002 reporting an increased risk of breast cancer from defendants' HRT drugs.

Addressing the first element of proof, this court in Bryant explained as follows:

> The requirement of proof of an affirmative act refers not to proof of the act that gives rise to the claim but rather to a *subsequent* affirmative act of concealment. See Liddell v. First Family Financial Servs., Inc., 146

9

>    Fed. Appx. 748, 751, 2005 WL 2044555, 2 (5th Cir. 2005)
>    (highlighting that part of Mississippi fraudulent
>    concealment doctrine requiring that affirmative acts of
>    concealment must occur "after the transactions at
>    issue"); Ross v. Citifinancial, Inc., 344 F.3d 458, 464
>    (5th Cir. 2003) ("Mississippi law is unambiguous:
>    Plaintiffs must prove a subsequent affirmative act of
>    fraudulent concealment to toll the limitations.").

Bryant, 816 F. Supp. 2d at 335. Thus, as defendants correctly point out, plaintiff cannot sustain her burden to prove fraudulent concealment with proof of alleged acts of alleged concealment that occurred prior to her diagnosis with breast cancer. So, while plaintiff purports to have presented evidence demonstrating such prior affirmative acts of concealment, this evidence is immaterial in the fraudulent concealment inquiry.

However, plaintiff has also offered evidence of what she submits are subsequent affirmative acts of concealment by Wyeth which prevented her from discovering her claims, including disseminating "Dear Doctor" letters to physicians in 2000 which she contends fraudulently and deliberately misled physicians about the level of breast cancer risk from HRT drugs and fraudulently represented that the drugs had unproven and off-label heart benefits, and "ghostwriting" numerous medical articles which downplayed the breast cancer risk and encouraged use of HRT medications for unproven heart and brain benefits.[8] Defendants

---

[8] Defendants purport to interpret plaintiff's response as asserting fraudulent concealment as a basis for tolling the statute of limitations only as to her fraud and misrepresentation claims, noting, as they do, that "Ms. Hull has not argued her negligence/strict products liability claims were fraudulently

10

respond that these purported acts of concealment cannot be a basis for finding fraudulent concealment to toll the statute of limitations since these same alleged acts of concealment are part of the basis for plaintiff's fraud cause of action.  However, as defendants have argued, and as the court has concluded supra, plaintiff's cause of action for fraud accrued at the time she was diagnosed with breast cancer.  That is the date on which she suffered consequent and proximate injury from defendants' alleged fraud.  Acts of concealment which post-dated her injury are not a basis of her fraud cause of action but rather of her assertion of fraudulent concealment as a basis for tolling the statute of limitation.  Contrary to defendants' urging, that fact distinguishes this case from Bryant.  In Bryant, the plaintiff alleged that Wyeth's labeling/package insert "does nothing to illuminate the problems of combined estrogen and progestin hormone therapy, even though Wyeth had known for well over a decade that physicians had been prescribing the two strictly in combination for women with intact uteri."  Bryant, 816 F. Supp. 2d 335-36.

---

concealed, nor could she prove it in light of the clear law ... regarding accrual of those types of causes of actions."
    The court acknowledges that plaintiff's memorandum is somewhat murky on this point; but ultimately, it seems reasonably clear that plaintiff is asserting that defendants' fraudulent concealment tolled the statute of limitations as to all her claims, not just as to her fraud-based claims.  Further, the court fails to perceive the basis of defendants' assertion that plaintiff is somehow less able to establish fraudulent concealment relative to her products liability claims than she is relative to her fraud-based claims.

The plaintiff thus concluded that Wyeth had "concealed the true risks of breast cancer from the entire medical and scientific community, and they were certainly concealed from a layman like Mrs. Bryant." Id. at 336. The court found that "[i]nadequacies in Wyeth's labeling which ultimately form the basis of plaintiff's claims for relief do not constitute subsequent affirmative acts of concealment." Id. The court specifically noted that Mrs. Bryant "ha[d] not identified any subsequent affirmative act(s) of concealment as required by § 15-1-67." Id. at 336, n.5.

In support of her claim of fraudulent concealment in this cause, plaintiff herein, in contrast to Mrs. Bryant, has not alleged merely that the product drug labeling was inadequate or deceptive or fraudulent; she has alleged that after she was diagnosed with breast cancer, Wyeth undertook actions specifically designed to conceal known (and/or reasonably knowable) risks of breast cancer from the use of HRT drugs, so that plaintiff was unable to discover her causes of action herein. In the court's opinion, her evidence is sufficient to create an issue for trial on the first element of fraudulent concealment as it relates to defendant Wyeth.

However, plaintiff has not identified any subsequent affirmative acts of concealment *by Upjohn* or by defendant Greenstone nor suggested any basis on which Wyeth's alleged acts of fraudulent concealment might be properly attributed to the

12

other defendants.  Accordingly, the court concludes that Upjohn and Greenstone are entitled to summary judgment.

As for the second element of proof on her assertion of fraudulent concealment by Wyeth, Wyeth contends plaintiff cannot obtain the benefit of tolling through fraudulent concealment because she cannot show that she was diligent in trying to discover her substantive claims.  More particularly, it contends that plaintiff cannot be found to have been diligent because she did not do anything at all to attempt to discover her claims prior to the announcement of the WHI study results.  Indeed, it does appear that from the time of her diagnosis with breast cancer until the time she learned of the WHI study results in 2002, plaintiff did not undertake any investigation into the cause of her breast cancer.  In the court's opinion, however, that does not necessarily foreclose her reliance on fraudulent concealment as a basis for tolling the statute of limitations.

The Mississippi Supreme Court has held that "a plaintiff cannot satisfy the due diligence requirement *if he had information regarding the claim and failed to take action* before the statute of limitations expired." Trustmark Nat. Bank v. Meador, 81 So. 3d 1112, 1120 (Miss. 2012) (emphasis added) (citing Andrus v. Ellis, 887 So. 2d 175, 181 (Miss. 2004)).  "The proper test is 'whether a reasonable person similarly situated would have discovered potential claims.'"  Whitaker v. Limeco Corp., 32 So. 3d 429, 436

13

(Miss. 2010) (quoting <u>Andrus</u>, 887 So. 2d at 180). <u>See</u> <u>also</u> <u>Andrus</u>, 887 So. 2d at 181 (observing that once informed she had no health insurance, diligence required that plaintiff either "object or inquire as to why her understanding of the insurance contract fundamentally differs from Commercial Credit's understanding"). In the related context of the discovery rule, the court in <u>Sundbeck v. Sundbeck</u>, No. 1:10CV23-A-D, 2011 WL 5006430 (N.D. Miss. Oct. 20, 2011), described reasonable diligence as requiring investigation when one has notice, or should have notice that she may have a claim and that inquiry is therefore warranted.

> The intent of the discovery rule is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them. <u>Wayne General Hosp. v. Hayes</u>, 868 So. 2d 997, 1001 (Miss. 2004). Mississippi courts have consistently held that a plaintiff seeking to avail himself of the tolling provided by the discovery rule must show that he "exercise[d] reasonable diligence in determining whether an injury suffered is actionable." <u>See</u>, <u>e.g.</u>, <u>Blailock ex rel. Blailock v. Hubbs</u>, 2005 WL 1385214, at *2 (Miss. 2005); <u>Wright v. Quesnel</u>, 876 So. 2d 362, 366 (Miss. 2004) ("But to benefit from the discovery rule, a plaintiff must be reasonably diligent in investigating her injuries."); <u>Punzo v. Jackson County</u>, 861 So. 2d 340, 349 (Miss. 2003) ("To claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury."). Elaborating on this requirement of reasonable diligence, the Fifth Circuit in <u>First Trust National Association v. First National Bank of Commerce</u>, stated:
>
>> The would-be plaintiff need not have become absolutely certain that he had a cause of action; he need merely be on notice-or should be-that he should carefully investigate the materials that suggest that a cause probably or potentially exists. Neither need the plaintiff know with precision each detail of

14

> breach, causation, and damages, but merely
> enough to make a plain statement of the case
> backed by evidence sufficient to survive a
> summary judgment motion.
>
> The [Mississippi Supreme Court] [has]
> explained that
>
> The plaintiffs need not have actual knowledge of
> the facts before the duty of due diligence arises;
> rather, knowledge of certain facts which are
> "calculated to excite inquiry" give rise to the
> duty to inquire.  The statute of limitations begins
> to run once plaintiffs are on inquiry that a
> potential claim exists.
>
> 220 F.3d 331, 337 (5th Cir. 2000)(citing Smith v.
> Sanders, 485 So. 2d 1051, 1052 (Miss. 1986)).

Sundbeck, 2011 WL 5006430, at 5.

In Simon v. Wyeth Pharmaceuticals, Inc., 989 A.2d 356 (Pa. Super. Ct. 2009), the Pennsylvania Superior Court discussed the reasonable diligence component of that state's discovery rule in the context of an HRT case against Wyeth, stating:

> If the injured party could not ascertain when he was
> injured and by what cause within the limitations period,
> "despite the exercise of reasonable diligence," then the
> discovery rule is appropriate.  Pocono International
> Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 468
> A.2d 468, 471 (1983).  The test is objective but takes
> into account individual capacities and society's
> expectations of "attention, knowledge intelligence and
> judgment" for citizens to protect their own interests.
> [Fine v. Checcio, D.D.S., 582 Pa. 253, 870 A.2d 850, 858
> (2005)].  The party who invokes the discovery rule has
> the burden of proving its applicability by establishing
> he acted with reasonable diligence in determining the
> fact and cause of his injury but was unable to ascertain
> it.  Weik v. Estate of Brown, 794 A.2d 907, 909 (Pa.
> Super. 2005) (citing Fine, supra at 858).
>
> This determination is a factual one as to whether the
> party, despite the exercise of reasonable diligence, was

15

>    unaware of his injury and unable to determine its cause.
>    Id.  Where the rule's application involves a factual
>    determination regarding whether the plaintiff exercised
>    due diligence in discovering his injury, the jury must
>    decide whether the rule applies.  Crouse v. Cyclops
>    Industries, 560 Pa. 394, 745 A.2d 606 (2000).

989 A.2d at 365-66.  The court in Simon concluded there was sufficient evidence for the jury to find that until the WHI study was published in July 2002, the plaintiff had no reason to suspect a link between her use of HRT and breast cancer, and thus implicitly, that there was sufficient evidence to support a finding that in making no investigation, she exercised reasonable diligence under the circumstances.  Id. at 366.  The court elaborated on these principles in Coleman v. Wyeth Pharmaceuticals, Inc., 6 A.3d 502 (Pa. Super. Ct. 2010), stating,

>    [A]t some point, a plaintiff should become sufficiently
>    aware of his injury and that it was caused by another to
>    trigger or "awaken inquiry."  Hayward v. Medical Center
>    of Beaver County, 530 Pa. 320, 608 A.2d 1040, 1043
>    (1992).  Knowledge of an injury alone is not sufficient
>    to trigger such inquiry.  One must have some reason to
>    suspect that the injury was caused by a third party to
>    impose a duty to investigate further.  Where the injury
>    is one that may result from nontortious conduct, such as
>    a disease, that point may be difficult to discern
>    without resolving factual issues.  Subjective
>    differences among persons and the situations in which
>    they find themselves are relevant in making that
>    determination.

6 A.3d at 510-11.

In the case at bar, the proper inquiry is not merely whether the plaintiff investigated to determine whether she had a potential claim against a third party once she was diagnosed with

16

breast cancer, but rather whether what steps, if any, a reasonable person in her position would have taken to investigate; or put another way, whether in failing to make such an investigation, she failed to exercise the level of diligence that a reasonable person would employ under the facts of her case. See Whitaker, 32 So. 3d at 436; Andrus, 887 So. 2d at 180. If she had information regarding a potential claim and yet failed to take action before the statute of limitations expired, she could not establish that she acted with reasonable diligence; but nothing suggests that she had any such information. In the court's opinion, under the circumstances of this case, a genuine issue of material fact exists on the issue of the diligence component of the plaintiff's fraudulent concealment defense to the statute of limitations.

Based on all of the foregoing, the court concludes that Upjohn is entitled to summary judgment on limitations grounds as plaintiff filed suit more than three years after her claims accrued and as she cannot establish fraudulent concealment by Upjohn or Greenstone. The court further concludes that genuine issues of material fact preclude a determination as a matter of law that the limitations period had expired on her claims against Wyeth before she filed suit. Accordingly, it is ordered that defendants' motion for summary judgment is granted as to Upjohn and Greenstone but denied as to Wyeth.

SO ORDERED this 11th day of October, 2012.

_____
UNITED STATES DISTRICT JUDGE